# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:04-cr-71 |
| | ) | (2:09-cv-294) |
| ANTHONY ALEXANDER, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Vacate, Set Aside, or Correct Convictions or Sentences, Pursuant to Title 28 U.S.C. Section 2255, filed by pro se Petitioner, Anthony Alexander, on September 16, 2009. For the reasons set forth below, the section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Inmate Reg. No. 03709-027), #1 Federal Way, P.O. Box 019001, Atwater, CA 95301, or to such other more current address that may be on file for the Petitioner.

BACKGROUND

Petitioner, Anthony Alexander, was convicted by a jury on eight counts: conspiracy to possess with intent to distribute

cocaine in violation of 21 U.S.C. § 846 (Count 1); distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 2, 5, and 6); distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 3); distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 4); and using a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b) (Counts 7 and 8). Alexander was sentenced to a term of 120 months imprisonment on Counts 1, 2, 4, 5, and 6; a term of life imprisonment on Count 3; and a term of 96 months imprisonment on Counts 7 and 8, all terms to be served concurrently.

Alexander (and his co-defendant, George Moon), filed a direct appeal with the Seventh Circuit, and on January 3, 2008, the Court of Appeals affirmed the conviction. *See United States v. Moon et al.*, 512 F.3d 359 (7th Cir. 2008). Alexander also filed a petition for certiorari, which was denied on October 6, 2008. Therefore, Alexander timely filed the instant petition on September 16, 2009, within the one year time limit. The Government filed its response on October 22, 2009, and Alexander filed his reply on November 12, 2009. Having been fully briefed, this motion is now ripe for adjudication.

Alexander raises only one issue in his section 2255 petition. He argues that his Sixth Amendment right to confrontation was violated during trial when a forensic chemist testified about chemical laboratory reports prepared by a different chemist. (2255

Mot., p. 2.) Alexander insists that *Crawford v. Washington*, 541 U.S. 36 (2004), and the recent decision in *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009), require that his conviction be vacated.

DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice

from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Petitioner's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his

4

unfamiliarity with pleading requirements."
*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Alexander's claims with these guidelines in mind.

The facts relevant to the issue raised by Alexander are as follows. James DeFrancesco is a forensic chemist with the Drug Enforcement Administration ("DEA") North Central Laboratory in Chicago, Illinois. (Trial Transcript, Vol. 5, p. 86 (hereinafter "Tr. 5/86").) He has personally analyzed substances to determine if they contain narcotics approximately 2,000 times. (Tr. 5/89.) The chemist that was initially assigned to this case was Ragnar Olson. (Tr. 5/95.) Olson left the DEA to go to law school. (*Id.*) He left on good terms, and there were never any allegations of misconduct as to Olson. (*Id.*) Olson and DeFrancesco were lab partners, and worked closely together. (Tr. 5/95-96.) To prepare for testifying at trial, DeFrancesco reviewed Olson's paperwork (including his handwritten notes), reviewed the data, and made sure that Olson's conclusions were supported by the data. (Tr. 5/97.) DeFrancesco explained to the jury the tests conducted by Olson on each of the substances at issue, as well as the results. (Tr.

5/100-103, 111, 115, 118, 120, 124, 132.)  DeFrancesco stated that he would have performed the same tests.  (Tr. 5/111.) Additionally, after reviewing Olson's notes, procedures, and the lab report, DeFrancesco formed his own expert opinions as to the contents of the exhibits (that the exhibits were marijuana, powder cocaine, cocaine base, and cocaine hydrochloride), the weights, and the purities of the substances.  (Tr. 5/103, 112, 116, 119, 120-21, 125, 132.)

The Confrontation Clause of the Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), established that the Confrontation Clause prohibits the introduction at trial of testimonial hearsay against the accused unless the witness is unavailable and the accused had a prior opportunity for cross-examination.

In his direct appeal, Alexander presented substantially the same argument as he does in the present petition, relying on *Crawford*.[1]  The Seventh Circuit first noted that at trial, Defendants did not object to DeFrancesco's testimony, or the introduction into evidence of Olson's report (other than on the

---

[1] *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (June 25, 2009), had not yet been decided at the time of Alexander's direct appeal.

ground that the tested samples' chain of custody was faulty). *Moon*, 512 F.3d at 361. After pausing to note that a defendant who sincerely wants live testimony should make the demand, and wondering if the appearance of Olson on the stand could have actually hurt defendants because they could not then undermine DeFrancesco's testimony "by reminding the jury that he had not done any of the work and that flaws in Olson's procedures may have been omitted from the lab notes," the Court concluded that it "need not pursue that subject, however, because there was no problem with DeFrancesco's testimony." *Id.* The Seventh Circuit made this finding because DeFrancesco testified as an expert, not as a fact witness. Federal Rule of Evidence Rule 703 provides that when an expert testifies, "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703; *see also United States v. Lawson*, 653 F.2d 299, 301-02 (7th Cir. 1981) (affirming use of hearsay data by an expert witness); *United States v. Posey*, 647 F.2d 1048, 1051 (10th Cir. 1981) ("It is quite reasonable for a chemist to review another chemist's analysis when forming an opinion as to the veracity of the latter's test results."); *United States v. Smith*, 964 F.2d 1221, 1223 (D.C. Cir. 1992) (holding under Rule 703 a fellow chemist's "report and, especially, the supporting documents are the kind of evidence on which a forensic chemist reasonably relies in forming an opinion on the composition of a particular substance").

The Seventh Circuit also found that although Olson's conclusions from the readings taken from the instruments could be considered statements "testimonial in nature," the instrument readings themselves are not "statements," so it does not matter whether they were "testimonial." *Moon*, 512 F.3d at 362. In other words, "the Confrontation Clause does not forbid the use of raw data produced by scientific instruments, though the interpretation *of* those data may be testimonial." *Id.* (emphasis in original). Ultimately, the Seventh Circuit concluded that:

> [W]e agree with *Washington* that the Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself. . . . DeFrancesco was entitled to analyze the data that Olson had obtained. Olson's own conclusions, based on the data should have been kept out of evidence (as doubtless they would have been, had defendants objected). Still, given DeFrancesco's live testimony and availability for cross-examination, Olson's inferences and conclusions were not harmful to the defendants.

*Id.* at 362. The recent ruling in *Melendez-Diaz* does not change this analysis, or the outcome.

In *Melendez-Diaz*, the offending testimony consisted of sworn affidavits of state laboratory analysts where the analysts did not testify in person. 129 S.Ct. at 2531. At trial, the prosecution placed into evidence three certificates of analysis showing the results of forensic analysis on substances, finding the substances contained cocaine. *Id*. The petitioner objected to the admission of the certificates, asserting that the Confrontation Clause

8

required the analysts to testify in person. *Id.* The objection was overruled, and the certificates were admitted under state law as evidence that the substances seized were narcotics. *Id.* The Supreme Court found that the affidavits were testimonial statements, and absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, the petitioner was entitled to confront the analysts at trial. *Id.* at 2532.

Contrary to Alexander's argument, *Melendez-Diaz* is easily distinguishable from this case. Here, rather than simply read a report into evidence, DeFrancesco testified live at trial. Additionally, DeFrancesco independently reviewed Olson's report, analyzed Olson's handwritten notes, independently analyzed the test results, visually inspected the drugs, and reached his own independent opinions regarding the substances of the drug exhibits. This type of testimony does not run afoul of *Melendez-Diaz*. *See, e.g., Larkin v. Yates,* No. CV 09-2034-DSF (CT), 2009 WL 2049991, at *1-*2 (C.D. Cal. July 9, 2009) (finding doctor testifying about the results of a DNA testing report, where the doctor independently reviewed the relevant data and offered her own interpretation of the data, did not violate the Confrontation Clause like the certificates in *Melendez-Diaz*); *Rector v. State*, 681 S.E.2d 157, 160 (Ga. 2009) (finding Confrontation Clause not violated when toxicologist who testified at trial had reviewed the work of the

doctor who had originally prepared the report and reached the same conclusion that the victim's blood sample tested negative for cocaine). As the Court in *Rector* stated, "rather than being a mere conduit for the doctor's findings, the toxicologist reviewed the data and testing procedures to determine the accuracy of the report. An expert may base his opinions on data gathered by others." 681 S.E.2d at 160 (citing *Watkins v. States*, 676 S.E.2d 196, 200 (Ga. 2009)). Similarly, DeFrancesco was not merely a conduit for Olson's finding. He independently analyzed the procedures and tests conducted, and testified as to his independent opinion about the drugs. Because DeFrancesco was subject to cross-examination at trial, the Confrontation clause was not violated in this case.

Finally, the question remains whether the rule set forth in *Melendez-Diaz* is even available as an argument in this case because it was decided after Alexander had exhausted his direct appeal. Assuming, without deciding, that *Melendez-Diaz* announced a new rule of law, Alexander would not be entitled to the benefit of such a new rule. *See Teague v. Lane*, 489 U.S. 299 (1989).

CONCLUSION

For the reasons set forth below, the section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to

10

Petitioner (Inmate Reg. No. 03709-027), #1 Federal Way, P.O. Box 019001, Atwater, CA 95301, or to such other more current address that may be on file for the Petitioner.


**DATED: January 25, 2010**          **/s/ RUDY LOZANO, Judge**
                                     **United States District Court**